Neal K. Ostler
6380 N. Silver Sage Dr.
Park City, UT    84098-6135
Day Telephone:(435)649-7152

FILED
CLERK, U S. DISTRICT COURT

2004 DEC 21  P 1: 06

DISTRICT OF UTAH

DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| **MIKE STEVEN STIDHAM**<br>Plaintiff<br><br>vs.<br><br>**UTAH PEACE OFFICERS STANDARD**<br>**AND TRAINING (POST)**,  et al<br>Defendants<br><br><br>**NEAL K. OSTLER,**<br>Intervenor, "pro se" | **MOTION TO RECONSIDER**<br>**PROTECTIVE ORDER**<br>**and/or**<br>**MOTION FOR ORDER PERMITTING**<br>**REVIEW AND  INSPECTION**<br>**OF POST FILES**<br>**and/or**<br>**MOTION TO RECONSIDER**<br>**AND  INTERVENE**<br><br>**Case No.** ____2:99-cv-0624____<br><br>Judge Cassell<br>Judge Benson |

Unsure how to appropriately proceed in this matter  but having a definite stake in the outcome

and "settlement" of the instant case  ...  Neal K. Ostler, acting on his own behalf "pro se",  does

hereby Motion To Reconsider Protective Order,  Motion for Order Permitting Review and Inspection

of Post Files, and Motion to Reconsider and  Intervene.

Mr. Ostler has already made GRAMA request for documents from the Defendants in this case

and has been denied access to any documents whatsoever.  He therefore makes the instant motions

pursuant to Utah Code Ann. §63-2-202, 63-2-304 (1953, as amended)

**63-2-202**. Access to private, controlled, and protected documents.(1) Upon request,
a governmental entity shall disclose a private record to:(a) the subject of the record;

**63-2-304. Protected records**. (5) test questions and answers to be used in future
license, certification, registration, employment, or academic examinations; (9) records
created or maintained for civil, criminal, or administrative enforcement purposes or
audit purposes, or for discipline, licensing, certification, or registration purposes, if

1



release of the records:    (a) reasonably could be expected to interfere with investigations undertaken for enforcement, discipline, licensing, certification, or registration purposes; (b) reasonably could be expected to interfere with audits, disciplinary, or enforcement proceedings; (c) would create a danger of depriving a person of a right to a fair trial or impartial hearing; (16) records prepared by or on behalf of a governmental entity solely in anticipation of litigation that are not available under the rules of discovery;

The files Mr. Ostler moves for leave to review and inspect are the POST maintained "miscellaneous" and "unofficial" files regardless of the custodian and regardless of whatever name or designation by which these files have come to be identified.

These files were produced by POST through discovery efforts of Stidham in the instant case but subject to a "Protection Order" of this Court. Albeit that cased is now closed the files or lists are potentially evidence in Mr. Ostler's case and it would be consistent with the principle of good order and justice to allow him access to those files to help him in the preparation of his case ... or in deciding to voluntarily dismiss on his own action based upon what information in find in those files.

Failure to allow Mr. Ostler access by granting him one of his motions simply enables the Defendants to go on using the files against those named not only with impunity but with the additional benefit of doing so with "protection" of this Court.

## PRINCIPLE OF COLLATERAL ESTOPPEL

It was disclosed in this instant case that the Department of Public Safety maintains and publishes a set of "miscellaneous" or "unofficial" files and calling it by any other name is not as appropriate as labeling it a "Blacklist" and it's positive should not have to argued by Mr. Ostler whether such activity is unlawful nor within the lawfully proscribed conduct of individuals within the Department of Public Safety or elsewhere in the State and throughout Utah's law enforcement community.

2

P.O.S.T. refused at first to give up the list but the 10th Circuit Court decided firmly that such activity is not proscribed statutorily and is therefore unlawful. The list should not enjoy continued    protection of the Court as Mr. Ostler and others have been potentially damaged and should have the right to access and review the file contents.

The Defendant's are not entitled to argue any longer that such activities are just a figment of Mr. Ostler's imagination and a barred from doing so by the principle of collateral estoppel.

## BRIEF PROCEDURAL HISTORY

Mr. Ostler's first claims of being blacklisted occurred back in 1990-1991 when he was literally "shown to the door" by Captain Webb of the Utah Highway Patrol  and then wrongfully terminated by the Department of Public Safety without any "due process."

Mr. Ostler filed a lawsuit in 1993 versus the Utah Department's of Commerce, Corrections, and Public Safety and against each of their Executive Directors and a number of "john doe" defendants in their individual capacity.  In the Fall of 1996, Mr. Ostler settled this out of Court with a stipulation from the DPSafety by  Commissioner Doug Brodrero. The stipulation was that the  Defendants would not interfere in Mr. Ostler's personal and professional endeavors, would respond to job reference inquiries in a positive manner, would reinstate him for the purpose of his obtaining a Public Safety Retirement, and there was a sum of cash.

Other than the sum of money the Defendants have breached the contract of their settlement by  maintaining him on the "Blacklist" and by interference continually since 1996, to wit:  His employment at Salt Lake Community College was interfered with by the P.O.S.T. in 1996 and resulted in Mr. Ostler filing a lawsuit in Utah's 3rd District Court

3

and was later dismissed by Judge Glen Iwasaki on procedural and technical grounds after refusing to allow Mr. Ostler to conduct discovery.

Between the years 1997 and 2000 Mr. Ostler completed more than fifty (50) job applications within Utah law enforcement and with more than fifteen agencies within various Departments of Utah. With fewer than half a dozen exception, these applications did not result in job interviews and Mr. Ostler suspected that he was being interfered with by the Department of Public Safety through defamation of character and by suspected blacklisting. At the time he never suspected that there was an actual physical set of "miscellaneous" and "unofficial" files but was certain that rumor, innuendo, and lies were being circulated by word of mouth within Utah's "good ole boy" network of Police Officers, i.e., they Blacklisted him.

Mr. Ostler documented all of these instances and occurrences and filed charges within the Equal Employment Opportunity Commission. The EEOC referred all of them to Utah's Department of Labor, Office of Anti-Discrimination which then conducted no investigation and merely filed them. In consequence the EEOC wrote Mr. Ostler letters advising him they were taking no action and giving him permission or "right to sue" letters.


In 2001, Mr. Ostler filed complaint in this U.S. District Court against fifteen agencies and departments of the State of Utah. The Defense was successful in chipping away at that lawsuit and in the Fall of 2003 Judge Tena Campbell dismissed against the agencies and gave Mr. Ostler fifteen days in which to have the individuals served and to proceed on a "ex parte young" theory of prosecution. Albeit Mr. Ostler provided hand-delivered service to the individual defendants within the time frame allowed, the case was dismissed

4

with prejudice by Judge Campbell in the Fall of 2003.. Mr. Ostler filed a timely "Notice of Appeal" and a 10th Circuit Panel upheld the dismissal amidst a re-characterization of the dismissal and failure to say in it's final order that the dismissal by Judge Campbell had been with prejudice. Mr. Ostler has now filed a "Writ of Certiorari" to have the matter considered by the U.S. Supreme Court as dismissal at all is contrary to the Judge Campbell's own time frame she'd afforded Mr. Ostler but her dismissal with prejudice is contrary to the Rules of Civil Procedure as well as decision of the U.S. Supreme Court, to wit: In *Henderson v. United States* (1996, 116 S. Ct. 1638): "The Federal Rules thus convey a clear message: Complaints are not to be dismissed if served within such additional time as the court may allow." and "Although the District courts have broad discretion to dismiss a complaint for failure to effect service, dismissal is not appropriate when there exists a reasonable prospect that service can be obtained," *Novak v. World Bank*, C.A.D.C. 1983, 703 F.2d 1305. See also *Chronister v. Sam Tanksley Trucking, Inc.*, D.C..Ill.1983, 569 F. Supp. 464.

In November of 2003, Mr. Ostler was hired by Salt Lake City Corp and terminated three months later in February, 2004. Mr. Ostler processed charges against Salt Lake City and the State of Utah for Retaliation in violation of the provisions of the Age Discrimination in Employment Act filed in this U.S. District Court.

Mr. Ostler has also filed fresh claims involving fresh set of operative facts and incidents in this Court against the State of Utah on §1983 conspiracy was malice to deny him his equal opportunity and right to equal protection under the law.

## CENTRAL ISSUE TO ALL CASES

In all of Mr. Ostler's cases the issue that is central to his complaints are that, through defamation of character, he is being blacklisted and unlawfully interfered with by the

5

"good ole boy" network of police officers in Utah, or namely, by Peace Officers Standards and Training and various law enforcement and public safety units through the State.

The Federal Rules of Civil Procedure provides that a party may conduct discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." The information sought by Mr. Ostler is relevant to this action since it may or may not absolve the Defendants of the accusation that they terminated him for the unlawful reason of retaliation, defamation or character and blacklisting.

As a "pro se" Plaintiff, Mr. Ostler has admittedly experienced procedural difficulties in presenting his case yet none of his filings have lacked adequate merits to sustain a "prima facie" test albeit the prosecution of his claims have not progressed to a point where the Court has granted him even limited discovery.

Recently the Defendants asserted that Mr. Ostler has brought his claims against them in bad faith and that he is using the court to merely harass them and have motioned the Court that he be sanctioned as a vexatious litigant. The Defendants assert that his case should be dismissed on the precedent that similar claims defamation and blacklisting claims were dismissed in his other cases.

In *Stidham v. POST* several employees of the Defendants were deposed and it was discovered that Defendants maintain files in which they archive pieces of information that comes to their attention and, if it did not rise to the level where a complaint would be issued by POST, the information would be placed in their "unofficial" or "miscellaneous" files and that the information was routinely shared with other law enforcement and public safety department officials in and throughout Utah.

Defendant's maintenance of these files and dissemination of the information within them is at the core of Mr. Ostler's Complaint against the Defendants and if such collected

6

information is not authorized by statute, which it is not, then such records cannot be classified as either "private," "controlled," or "protected," within the scope and meaning of GRAMA.

Obviously the maintenance and use of such files or materials is highly prejudicial to peace officers and they are illegal and should not be condoned and information in these files may be of particular relevance to the Plaintiff's claims and he needs to be a in a position to determine this. Therefore it is essential that Mr. Ostler have access to these files if he is to prove his claims and the allegations he has made against the Defendants.

If the Defendants are and were continuing these practices in contravention of their statutory authority during the period of Mr. Ostler's complaints then these files constitute essential evidence in the defense of his case.

## PLAINTIFF STIPULATION

Mr. Ostler is not making this claim on behalf of other peace officers that may have been harmed by the nature of these "miscellaneous" files, but for the harm he has incurred himself and is making this request seeking discovery for the purposes of establishing that Defendants are maintaining records on him in contravention of their authority and that they have used it cause Salt Lake City Corporation to retaliate against him in violation of his §1983 civil rights and not the rights of someone else.

Therefore Mr. Ostler does swear and aver as follows: That he does not seek any public notoriety for himself and nor will he make any effort to annoy, embarrass, or oppress any citizen or to seek public scorn, ridicule, or humiliation of the Defendants. That if the Court will grant this motion, any and all information he obtains will be used only for trial and trial preparation of his lawsuits and shall not be used for any other purpose other than solely in connection with legal defense of his claims against motions for summary

7

judgement and for prosecution of his causes of action filed lawfully and in good faith in these Courts, the last forum of recourse for the damages he has claimed.

## CONCLUSION

If the Court should Compel the production of these relevant files or Grant that Mr. Ostler have access to them for the purpose of review and trail preparation, neither Defendants nor any other state official or agent or individual should be permitted to determine what is relevant to Plaintiff by either altering or deleting any information in these files and such should be so Ordered by the Court.

Plaintiff prays for an Order consistent with this motion, either: (1) lifting the protection order so he can contact respective parties and/or their attorney, or (2) allowing him access to review the files, or (3) granting him a right to intervene.

Subscribed and Sworn before me this 20th day of December, 2004.

_____
Neal K. Ostler

---

### RECORD of NOTICE

I verify that on the 20th day of December, 2004,  an original signed copy of this MOTION TO RECONSIDER PROTECTIVE ORDER and/or MOTION FOR ORDER PERMITTING REVIEW AND  INSPECTION OF POST FILES and/or MOTION TO RECONSIDER AND  INTERVENE was sent by U.S. Mail to the Defendant's Attorney at the following address:

Scott D. Cheney
Assistant Attorney General
160 E. 300 So.  6th Floor
P.O. Box 140856
S.L.C., Utah 84114-0856

_____
Neal K. Ostler
Plaintiff, Pro se

8